Case 4:22-cv-03224   Document 17   Filed on 03/22/23 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
March 22, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VERONICA DALE, (BOP #13381-002) | § § § | |
| Petitioner, | § § | |
| vs. | § § | CIVIL ACTION NO. H-22-3224 |
| TONYA BENTON HAWKINS, Warden, FPC Bryan, *et al.*, | § § § § | |
| Respondents. | § § | |

**MEMORANDUM OPINION AND ORDER**

Federal inmate Veronica Dale filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that the Bureau of Prisons failed to award her proper time credits under the First Step Act. (Docket Entry No. 1). The respondent, Warden Tonya Benton Hawkins, answered the petition with a motion for summary judgment. (Docket Entry No. 13). Dale responded to the motion and attached extensive exhibits. (Docket Entry No. 16). Having reviewed the petition, the motion and response, all matters of record, and the law, the court determines that Warden Hawkins's motion should be granted, and Dale's petition dismissed without prejudice. The reasons are explained below.

**I.    Background and Procedural History.**

In May 2012, Dale was sentenced to 334 months in prison followed by 3 years of supervised release based on multiple convictions for conspiracy to defraud the government; false, fictitious, or fraudulent claims; and theft of government money, property, or records. *See United States v. Dale*, No. 2:10-CR-00242 (M.D. Ala. May 22, 2012), at Dkt. 214. Dale is currently

incarcerated at Federal Prison Camp Bryan with a projected release date of June 23, 2033. *See* [Inmate Locator (bop.gov)](bop.gov) (last visited Mar. 15, 2023).

On September 1, 2022, Dale filed a petition for a writ of habeas corpus, seeking 5,100 days of "Earned Time Credits" under the First Step Act, which she contends should be applied to reduce her prison sentence.[1] (Docket Entry No. 1, p. 7-8). She alleges that the Bureau of Prisons has not properly calculated the First Step Act Time Credits that she has earned. (*Id.* at 5-16). Dale admits that she did not exhaust her administrative remedies with the Bureau of Prisons, contending that doing so would be futile. (*Id.*). She asks the court to "enforce the First Step Act" by reducing her term of incarceration by 5,100 days. (*Id.* at 16).

Warden Hawkins responded with a motion for summary judgment. (Docket Entry No. 13). She contends that Dale's petition should be dismissed without prejudice because she failed to exhaust her administrative remedies. (*Id.* at 4-9). Warden Hawkins attached the affidavit of Alice Diaz-Hernandez, the Associate Warden in charge of the Administrative Remedy Program at Federal Prison Camp Bryan, who states that Dale first submitted her initial Request for Administrative Remedy on September 6, 2022, and Warden Hawkins responded to that Request on October 21, 2022.[2] (Docket Entry No. 13-1, pp. 3, 23, 26). Dale submitted a Regional Office Administrative Remedy Appeal on November 7, 2022, which was denied in January 2023. (*Id*. at 3, 24). Diaz-Hernandez attached documents to her affidavit setting forth the details of the Bureau of Prisons administrative remedy process and supporting her affidavit testimony. (*Id.* at 6-13).

---

[1]The parties refer to the time credits earned under the First Step Act as "Earned Time Credits." The Bureau of Prisons rules refer to the credits as "FSA Time Credits." The court uses "First Step Act Time Credits" in this opinion to refer to those credits earned under the First Step Act.

[2]Warden Hawkins utilized the one-time 20-day extension of time to respond permitted under 28 C.F.R. § 542.18. (Docket Entry No. 13-1, p. 27).

Also attached to Warden Hawkins's motion is an affidavit of Valdie Masco, the Acting Case Management Coordinator at Federal Prison Camp Bryan, in charge of computing inmate sentences and credits. (Docket Entry No. 13-2). In her affidavit, Masco identified the dates on which Dale was eligible to receive First Step Act Time Credits and explains the calculation of those credits. (*Id.* at 4-5). Masco testified that as of January 8, 2023, Dale has earned 500 days of First Step Act Time Credits, 365 of which have been applied to reduce her prison sentence. (*Id.* at 4). The remainder of Dale's First Step Act Time Credits, and any future First Step Act Time Credits she earns, will be applied toward her time in pre-release custody. (*Id.*). Warden Hawkins asserts that this evidence shows that Dale's First Step Act Time Credits have been properly calculated and applied and that Dale is not entitled to the relief she seeks in her petition. (Docket Entry No. 13, pp. 7-9).

Dale filed a response, asserting that she "attempted" the Bureau of Prisons' administrative remedy process and contending that she exhausted that process while her petition was pending. (Docket Entry No. 16, pp. 9-10). She argues that she should be excused from exhausting the administrative remedy process because the Bureau of Prisons never responded to her appeal to the Office of the General Counsel that she submitted on February 17, 2023. (*Id.* at 10-11). On the merits, Dale argues that the Bureau of Prisons' rules regarding the calculation of First Step Act Time Credits do not reflect how Congress intended credits to be earned, and she asks the court to award the additional credits she contends she is entitled to, which she now claims total 5,218.5 days. (*Id.* at 11).

## II. The Legal Standards.

### A. The Summary Judgment Standard.

Warden Hawkins has moved for summary judgment in her favor. Summary judgment is

3

proper when the record shows that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (cleaned up). "The burden then shifts to the nonmovant to show the existence of a genuine fact issue for trial." *Id.* (cleaned up).

When determining whether issues of fact exist that would preclude summary judgment, the court must view any disputed facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.") (citation omitted). This general rule "applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). But to satisfy her burden on summary judgment, the nonmoving party must point to record evidence that supports a conclusion that genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party may not rely on the allegations or denials in pleadings or on her own unsubstantiated assertions to avoid summary judgment. *See Anderson*, 477 U.S. at 256; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

**B.     Pleadings from Self-Represented Litigants.**

Dale is representing herself in this habeas proceeding. Habeas petitions filed by self-represented litigants are not held to the same standards as pleadings filed by lawyers, and instead must be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Even under a liberal construction, self-represented litigants "must properly plead sufficient facts that, when liberally construed, state a

plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (footnotes omitted).

### III. Discussion

#### A. Exhaustion of Administrative Remedies

Warden Hawkins argues that Dale's petition should be dismissed because she failed to fully exhaust the administrative remedies available to her through the Bureau of Prisons before filing her habeas petition.

The law is well settled that a prisoner must exhaust all available administrative remedies before challenging the administration of his or her sentence in a federal habeas petition. *See Gallegos-Hernandez v. United States,* 688 F.3d 190, 194 (5th Cir. 2012) (per curiam); *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam); *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993). The exhaustion doctrine requires the prisoner to "fairly present all of his claims" through all steps of the available administrative remedy process before pursuing federal habeas relief. *Dickerson v. Louisiana*, 816 F.2d 220, 228 (5th Cir. 1987). Prisoners who voluntarily stop pursuing their administrative remedies prematurely have not exhausted those remedies. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). Similarly, prisoners who either start or continue administrative remedy proceedings after filing their habeas petition have not satisfied the exhaustion requirement. *See Fuller*, 11 F.3d at 62; *see also Cartwright v. Outlaw*, 293 F. App'x 324, 324 (5th Cir. 2008) (per curiam); *Little v. U.S. Parole Comm'n*, 67 F. App'x 241, 2003 WL 21108493, at *1 (5th Cir. Apr. 21, 2003) (per curiam) (administrative appeal filed "right after" the prisoner filed his habeas petition did not satisfy the exhaustion requirement). When a prisoner

fails to exhaust her available administrative remedies before filing a habeas petition, the petition is subject to dismissal. *See Fuller*, 11 F.3d at 62.

Relevant to a claim for First Step Act Time Credits, the Bureau of Prisons provides a four-step administrative remedy process through which prisoners can present a complaint. *See* 28 C.F.R. §§542.10–542.18.[3] In the first step, the prisoner presents the issue to staff at the facility where she is housed using a BP-8 form, and staff attempts to informally resolve the issue. *See* 28 C.F.R. § 542.13(a). If the issue is not resolved to the prisoner's satisfaction, the second step is for the prisoner to file a formal Administrative Remedy Request with the warden using a BP-9 form. *See* 28 C.F.R. § 542.14(a). The warden has 20 days in which to respond to the request, but this time may be extended once for an additional 20 days. *See* 28 C.F.R. § 542.18. If the prisoner does not receive a response within the permitted time, including any extension, the request is deemed denied. *Id.* If the prisoner is not satisfied with the warden's response, the third step requires the prisoner to appeal to the Regional Director within 20 days of the warden's response by submitting a BP-10 form. *See* 28 C.F.R. § 542.15(a). The Regional Director has 30 days in which to respond to the appeal, but this 30-day period may be extended once for another 30 days. *See* 28 C.F.R. § 542.18. If the prisoner does not receive a response within the permitted time, including any extension, the appeal is viewed as denied. *Id.* If the prisoner is not satisfied with the Regional Director's response, the final step requires the prisoner to appeal within 30 days of that response to the Office of General Counsel using a BP-11 form. *See* 28 C.F.R. § 542.15. That Office has 40 days in which to respond to the appeal, and this 40-day period may be extended once by 20 days. *See* 28 C.F.R. § 542.18. If the prisoner does not receive a response within the permitted

---

[3]Hawkins also provided documentation concerning the administrative remedy process in the affidavit from Hernandez attached to her motion. (Docket Entry No. 13-1, pp. 6-13).

time, including any extension, the appeal is viewed as denied. *Id.* The appeal to the Office of General Counsel is the final administrative appeal provided by the Bureau of Prisons. *Id.*

The evidence provided by Warden Hawkins shows that Dale failed to fully exhaust her administrative remedies before filing her habeas petition. Dale submitted her BP-8 Informal Resolution Form to her Unit Counselor on August 17, 2022. (Dkt. 16-1, p. 34). In it, she asks for her First Step Act Time Credits to be applied to reduce her sentence. (*Id.*). The Counselor responded on August 26, 2022, explaining that credits were being applied as the calculations were made. (*Id.* at 35). Five days later, on September 1, 2022, Dale filed her habeas petition in this court, alleging that her First Step Act Time Credits were improperly calculated. Dale then pursued the next three steps of the Bureau of Prisons administrative remedy process while her habeas petition was pending. (Docket Entry Nos. 13-1, pp. 3, 24, 26-27, 29; 16-1, pp. 38, 40). None of Dale's submissions in the administrative remedy process challenged the accuracy of the Bureau of Prisons' calculation of her earned First Step Act Time Credits. These documents establish that Dale did not exhaust the available Bureau of Prisons administrative remedy process before she filed her habeas petition in this court. Nor did she raise the claims that she raises in this petition before the Bureau of Prisons.

In her response to Warden Hawkins's motion, Dale does not point to record evidence supporting a conclusion that there are disputed fact issues material to determining whether she fully and properly exhausted her administrative remedies before filing her habeas petition. Dale does not address the record evidence that she completed only one step in the administrative remedy process before filing her habeas petition. She does not explain why she filed her habeas petition before even attempting to exhaust the remaining three steps in the administrative remedy process. And she does not explain why she raises a claim in her habeas petition different from the one she

7

pursued with the Bureau of Prisons. Instead, she argues only that she "attempt[ed] the [Bureau of Prisons]'s administrative remedy process" and that her failure to pursue all the steps should be excused because she had not received a response to her February 7, 2023, appeal to the Office of General Counsel by the time she mailed her response on March 3, 2023. (Docket Entry No. 16, p. 9).

Dale has not satisfied her burden to show that there are factual disputes material to the issue of whether she properly and fully exhausted her available administrative remedies. The undisputed record evidence shows that Dale completed only one of the four steps of the administrative remedy process before filing her habeas petition. The undisputed record evidence also shows that she did not raise the same claim in the administrative proceeding that she raises in her habeas petition. The Bureau of Prisons' failure to respond to Dale's appeal to the Office of General Counsel by March 3, 2023, does not excuse her failure to exhaust her administrative remedies because that Office's response was not due until March 20, 2023. *See* 28 C.F.R. § 542.18 (providing 40 days for the Office of General Counsel to respond to an appeal). By neither pursuing the available administrative remedies to conclusion nor raising her current claim with the Bureau of Prisons, Dale failed to fairly present her claim through all steps of the administrative remedy process before filing her petition and so failed to exhaust her administrative remedies. Her petition is dismissed without prejudice for lack of exhaustion.

B. **Merits**

Even if this court were to reach the merits of Dale's claims, the court would deny her petition because she is not entitled to the relief she seeks. Dale alleges that the Bureau of Prisons has failed to award her all the First Step Act Time Credits she has earned because she should be entitled to "stack" her activities to earn multiple First Step Act Time Credits per day if she

8

participates in multiple approved programming or activities in a single day. Dale contends that these "stacking credits" are permitted because the First Step Act is "silent" on them. (Docket Entry No. 16, p. 13-14). Dale's claim is contradicted by the language of the First Step Act.

The First Step Act provides that eligible prisoners earn time credits as follows:

(A) In general.--A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:

(i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

(ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

18 U.S.C. § 3632(d)(4)(A). Under this provision, Congress made clear that a prisoner earns First Step Act Time Credits based on the number of days in which they participate in eligible programs, not the number of eligible programs in which they participate. *See, e.g., Cazares v. Hendrix*, 575 F. Supp. 3d 1289, 1301 (D. Ore. 2021) (interpreting the term "day" in § 3632(d)(4)(A) as meaning any amount of time spent participating in approved programming or activities during one calendar day based on the Bureau of Prisons' "well-established practice of awarding a full day of credit for any amount of time in custody or detention").

The legislative history of the Bureau of Prisons' rules also contradicts Dale's proposed interpretation of the First Step Act. Recognizing that the First Step Act did not define the term "day," the Bureau of Prisons originally proposed that a "day" be defined as "one eight-hour period of participation in an [approved program or activity] that an eligible inmate successfully completes." *See* First Step Act Time Credits, 87 Fed. Reg. 2705, 2706 (Jan. 19, 2022). Multiple

9

comments were received indicating that this definition did not comport with Congressional intent that prisoners receive First Step Act Time Credits based on the number of "calendar days" of their participation. *Id.* After considering the comments, the Bureau of Prisons amended its rule to calculate First Step Act Time Credits based on the number of calendar days of participation rather than the number of hours of participation. *Id.* at 2706-07.

Dale's interpretation, which would calculate First Step Act Time Credits based on the number of eligible programs in which a prisoner participates rather than the number of days of participation in such programming, has no support in either the applicable statutory language or the legislative history of either the First Step Act or the Bureau of Prisons' rules. Dale is not entitled to additional First Step Act Time Credits based on this unsupported interpretation. Her claim for such additional credits is denied.

**IV.     Conclusion**

The court grants the respondent's motion for summary judgment, (Docket Entry No. 13), and dismisses Dale's petition without prejudice because she failed to exhaust her administrative remedies. The court denies as moot any remaining pending motions. No certificate of appealability will be issued. *See Padilla v. United States*, 416 F.3d 424, 425 (5th Cir. 2005) (per curiam); *Pack v. Yusuff*, 218 F.3d 448, 451 n.3 (5th Cir. 2000).

SIGNED on March 22, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge